IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| ANTHONY D. KIRKSEY | ) | CV NO 09-00334 DAE KSC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CLAYTON FRANK, NOLAN | ) | |
| ESPINDA, CLAUDIO BORGE, JR., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER: (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AND (2) DENYING PLAINTIFF'S
<u>MOTION FOR CHANGE OF VENUE</u>

On February 28, 2011, the Court heard Defendants Clayton Frank,

Nolan Espinda, and Claudio Borge, Jr.'s Motion for Summary Judgment (Doc.

# 65.) Plaintiff Anthony D. Kirksey, pro se, appeared at the hearing on behalf of

himself; Kendall J. Moser, Esq., appeared at the hearing on behalf of Defendants.

After reviewing the motion and the supporting and opposing memoranda, the Court

GRANTS IN PART and DENIES IN PART Defendants' Motion for Summary

Judgment (Doc. # 65) and DENIES Plaintiff's Motion for Change of Venue (Doc.

# 74).

# BACKGROUND

This case arises from events that occurred while pro se Plaintiff Anthony D. Kirksey ("Plaintiff") was incarcerated at the Oahu Community Correctional Center ("OCCC."), from October 2007 until December 2008. Plaintiff alleges that while he was incarcerated at OCCC, Clayton Frank ("Frank"), Nolan Espinda ("Espinda"), and Claudio Borge, Jr. ("Borge") (collectively, "Defendants"), violated his constitutional and statutory rights, including his rights under the First and Eighth Amendments of the United States Constitution, and under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA").

On July 22, 2009, Plaintiff brought the instant civil rights action pursuant to 42 U.S.C. § 1983, alleging constitutional violations of religious freedom, first amendment speech, and engagement in cruel and unusual punishment.  (Doc. # 1.)  On September 11, 2009, this Court issued an Order Dismissing Complaint in Part Pursuant to 28 U.S.C. § 1915A.  (Doc. # 8.)  On October 5 2009, Plaintiff filed a First Amended Complaint.  (Doc. # 10.)  On October 21, 2009, this Court issued an Order Dismissing First Amended Complaint in Part Pursuant to 28 U.S.C. § 1915.  (Doc. # 16.)  On November 17, 2009, Plaintiff filed a Second Amended Complaint ("SAC"), alleging two counts: (Count

I) that Plaintiff's First and Fourteenth Amendment rights and rights under RLUIPA were violated because he was denied the right to exercise his religion; and (Count II) that his Eighth Amendment right was violated because he was subjected to cruel and unusual punishment due to overcrowding and lack of opportunities for exercise. (Second Amended Complaint "SAC," Doc. # 21 at 5–6A.)

On January 6, 2011, Defendants filed a Motion for Summary Judgment ("Motion") and a Concise Statement of Facts ("CSF")[1]. (Motion for Summary Judgment "MSJ," Doc. # 65; Concise Statement of Facts "CSF," Doc. # 66.) On February 22, 2011, Plaintiff filed an Opposition to Defendants' Motion for Summary Judgment ("Opposition"). (Opp'n, Doc. # 76.) On February 25, 2011, Defendants filed a Reply in support of their Motion. (Reply, Doc. # 82.)

On February 3, 2011, Plaintiff filed a Motion for Change of Venue. ("Mot. 2," Doc. # 74.) On February 15, 2011, Defendants filed an Opposition to Plaintiff's Motion for Change of Venue. ("Opp'n 2," Doc. # 76.)

---

[1] Defendants argue in their Reply that the facts set forth in Defendants' CSF must be deemed admitted as they are not controverted by a separate concise statement from Plaintiff. (Reply at 2.) Pursuant to Local Rule 56.1(g), all facts in Defendants' CSF are deemed admitted, as Plaintiff has failed to file a CSF rebutting the arguments set out in Defendants' CSF. While the Court recognizes that Plaintiff is pro se, pro se litigants must still follow the same rules of procedure that govern other litigants. King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987).

On March 1, 2011, this Court filed an Order Directing Supplemental Briefing in Submission of Additional Evidence if Available. (Doc. # 85.) On March 21, 2011, Defendants filed a Brief Re: Submission of Additional Evidence. (Doc. # 87.) On March 21, 2011, Plaintiff also filed additional briefing in support of his position. (Doc. # 88.)

## STANDARD OF REVIEW

Rule 56 requires summary judgment to be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Porter v. Cal. Dep't of Corr., 419 F.3d 885, 891 (9th Cir. 2005); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). A main purpose of summary judgment is to dispose of factually unsupported claims and defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial. See id. at 323. Before granting summary judgment, however, a non-moving party must have a "'full and fair opportunity to ventilate the issues [related to] the . . . claims.'"

Norse v. City of Santa Cruz, --- F.3d ---, 2010 WL 5097749, at *3 (9th Cir. Dec. 15, 2010) (quoting Greene v. Solano Cnty. Jail, 513 F.3d 982, 990 (9th Cir. 2008)).

The burden initially falls upon the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323). This assertion must be supported by citations "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials," or by demonstrating "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c).

If the moving party meets its burden under Rule 56, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial" and may not rely on the mere allegations in the pleadings. Porter, 419 F.3d at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). In setting forth "specific facts," the nonmoving party may not meet its burden on a summary judgment motion by making general references to evidence without page or line numbers. S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003);

Local Rule 56.1(f) ("When resolving motions for summary judgment, the court

shall have no independent duty to search and consider any part of the court record

not otherwise referenced in the separate concise statements of the parties."). "[A]t

least some 'significant probative evidence'" must be produced. T.W. Elec. Serv.,

809 F.2d at 630 (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S.

253, 290 (1968)). "A scintilla of evidence or evidence that is merely colorable or

not significantly probative does not present a genuine issue of material fact."

Addisu, 198 F.3d at 1134. Further, the Ninth Circuit has "refused to find a

'genuine issue' where the only evidence presented is 'uncorroborated and self-

serving' testimony." Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061

(9th Cir. 2002) (citing Kennedy v. Applause, Inc., 90 F.3d 1477, 1481 (9th Cir.

1996)). "Conclusory allegations unsupported by factual data cannot defeat

summary judgment." Rivera v. Nat'l R.R. Passenger Corp., 331 F.3d 1074, 1078

(9th Cir. 2003).

      Where conflicting evidence is presented by both parties, "the judge

must assume the truth of the evidence set forth by the nonmoving party with

respect to that fact." T.W. Elec. Serv., 809 F.2d at 631. In other words, evidence

and inferences must be construed in the light most favorable to the nonmoving

party. Porter, 419 F.3d at 891. The court does not make credibility determinations

or weigh conflicting evidence at the summary judgment stage. Id.; see also Nelson v. City of Davis, 571 F.3d 924 (9th Cir. 2009) ("[C]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.") (citations omitted). However, inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. T.W. Elec. Serv., 809 F.2d at 631.

DISCUSSION

Plaintiff's SAC sets forth claims against Defendants in both their official and individual capacities. (SAC at 1–2.) Plaintiff's prayer for relief seeks injunctive relief and monetary damages totaling $300,000.00. Defendants, in their Motion, move for summary judgment as to all claims asserted against them in Plaintiff's SAC. (MSJ at 5–10.) The Court grants Defendants' Motion as to Defendants in their official capacity. With respect to Defendants in their individual capacities, the Court grants Defendants' Motion as to Count I, and denies Defendants' Motion as to Count II.

I.    Injunctive Relief

This Court's October 8, 2009 Order denying Plaintiff's Motion for Reconsideration, and October 21, 2009 Order Dismissing First Amended

Complaint in Part, dismissed as moot Plaintiff's request for injunctive relief. (Doc. # 14; Doc. # 16.) To the extent that Plaintiff realleges a prayer for injunctive relief in his SAC, such a remedy remains moot. As explained in the aforementioned orders, Plaintiff is no longer incarcerated at OCCC., and he has failed to show that there is a reasonable probability that he will be transferred back there. Accordingly, the Court declines to revisit this issue.

II.     Claims Against Defendants In Their Official Capacity

Plaintiff's SAC brings claims against Defendants in their official and individual capacities. The Court previously dismissed with prejudice Plaintiff's claims against Defendants in their official capacities (Doc. # 8), and Plaintiff's Motion for Reconsideration was denied as well (Doc. # 14). The Court now reiterates that Plaintiff's claims against Defendants in their official capacities fail because "[t]he Eleventh Amendment bars suits against a state or its agencies, regardless of the relief sought, unless the state unequivocally consents to a waiver of its immunity." Wilbur v. Locke, 423 F.3d 1101, 1111 (9th Cir. 2005) (quoting Yakama Indian Nation v. State of Wash. Dep't of Revenue, 176 F.3d 1241, 1245 (9th Cir. 1999)); See Doe v. Lawrence Livermore Nat'l Lab., 131 F.3d 836, 839 (9th Cir. 1997). Indeed, state officials acting in their official capacities are immune from suit for monetary damages under the Eleventh Amendment since the

suit is no different from a suit against the State itself.[2]  Will v. Mich. Dep't of
State Police, 491 U.S. 58, 71 ("a suit against a state official in his or her official
capacity is not a suit against the official but rather is a suit against the official's
office."); see also Hafer v. Melo, 502 U.S. 21, 24-25 (1991) (holding that a
defendant acting in his official capacity receives the same immunity as the
government agency to which he belongs).   Thus, the Eleventh Amendment bars
Plaintiff's claims for damages against Defendants as state officials in their official
capacities.[3]

        Accordingly, the Court GRANTS Defendants' Motion for Summary
Judgment as to Defendants in their official capacity.

---

[2] The only exception for a suit to go forward against Defendants in their
official capacity is a suit "for prospective declaratory and injunctive relief . . . to
enjoin an alleged ongoing violation of federal law."  Wilbur, 423 F.3d at 1111
(quoting Agua Caliente Band of Cahuilla Indians v. Hardin, 223 F.3d 1041, 1045
(9th Cir. 2000); see Ex parte Young, 209 U.S. 123 (1908); see also Will, 491 U.S.
at 71 n.10 ("official-capacity actions for prospective relief are not treated as actions
against the State.").  However, as stated above, Plaintiff's claims against
Defendants for injunctive relief fail.

[3] The court refers to Borge as a state official for screening purposes only, and
makes no finding regarding whether Defendant Borge is a state actor for purposes
of liability under § 1983.

III.    Claims Against Defendants In Their Individual Capacity

Both of Plaintiff's claims under § 1983 are stated as against

Defendants in their individual capacity as well.  Specifically, Plaintiff asserts two

claims against Defendants: (1) that he was denied the reasonable opportunity to

worship in compliance with his religion, and that he was denied a diet consistent

with his religion's rules, in violation of the First and Fourteenth Amendments and

RLUIPA; and (2) that prison conditions deprived him of his right to exercise, in

violation of the Eight Amendment.  Section 1983 of Title 42 of the U.S. Code

states:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage . . . subjects, or causes to be
> subjected, any citizen of the United States . . . to the
> deprivation of any rights, privileges, or immunities secured
> by the Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other proper
> proceeding for redress . . . .

42 U.S.C. § 1983.  "Section 1983 does not create any substantive rights; rather it is

the vehicle whereby plaintiffs can challenge actions by governmental officials."

Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 978 (9th Cir. 2004) (quoting

Henderson v. City of Simi Valley, 305 F.3d 1052, 1056 (9th Cir. 2002))

(quotations omitted).  To state a claim under Section 1983, "'a plaintiff must show

(1) that the conduct complained of was committed by a person acting under color

of state law; and (2) that the conduct deprived the plaintiff of a federal constitutional or statutory right.'" Jensen v. City of Oxnard, 145 F.3d 1078, 1082 (9th Cir. 1998) (quoting Wood v. Ostrander, 879 F.2d 583, 587 (9th Cir. 1989)).

In the instant case, Defendants contend that they are entitled to qualified immunity as to both of Plaintiff's claims. (MSJ at 7–10.) The Court will address these arguments in turn.

A.    Count I: First Amendment and RLUIPA

In Count I of Plaintiff's SAC, he alleges that he was "denied any religious services, access to a spiritual advisor, literature, and any religious items consistant [sic] and necassary [sic] for the observance of the Islamic faith." (SAC at 5A.) He further contends that "Christian and Jewish inmates were able to obtain religious items, literature, and diets from the administration to observe their religious requirements." (Id.) Thus, Plaintiff's two main contentions are that he did not receive a diet consistent with his religious beliefs, and that he was not able to worship properly.

Defendants argue that they, in their individual capacities, are entitled to qualified immunity on Plaintiff's § 1983 claim for violation of the First

Amendment and RLUIPA.[4]  (MSJ at 7–10.)  "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808, 815 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  In analyzing the qualified immunity defense, the Court must determine: (1) "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right"; and (2) "whether the right at issue was 'clearly established' at the time of [the] defendant's alleged misconduct."  Pearson, 129 S. Ct. at 816. "Qualified immunity" is an immunity from suit, not a mere defense to liability. Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).  The party asserting the affirmative defense of qualified immunity bears the burden of proving that defense.  Benigni v. City of Hemet, 879 F.2d 473, 479 (9th Cir. 1988).

It is within the court's discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  Id. at 818; see Mueller v. Auker, 576

---

[4] Plaintiff's contention that Defendants' actions also violated his rights under the Fourteenth Amendment simply establishes the fact that the Fourteenth Amendment incorporates the First Amendment's protection of religious free exercise on the state level.  See Cantwell v. Connecticut, 310 U.S. 296 (1940).

F.3d 979, 993 (9th Cir. 2009).  In some circumstances, a court may choose to address the second prong first to determine whether there was a violation of a clearly established law before "turning to the more difficult question of whether the relevant facts make out a constitutional question at all."  Mueller, 576 F.3d at 994 (quoting Pearson, 129 S. Ct. at 819).  Here, the Court must determine if Defendants violated Plaintiff's First Amendment right to religion, and rights under RLUIPA[5].  As explained below, Defendants did not violate those rights.

The free exercise clause of the First Amendment to the U.S. Constitution states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ."  U.S. CONST. amend. I.  RLUIPA is a federal law prohibiting, inter alia, the imposition of burdens on the ability of prisoners to worship as they please.  42 U.S.C. § 2000cc-1 et. seq.  To the extent that Plaintiff asserts his right to religion under both the First Amendment to

---

[5] The Court does not discuss whether Plaintiff's rights were "clearly established," as it is already well-established within the Ninth Circuit that "[i]nmates . . . have the right to be provided with food sufficient to sustain them in good health that satisfies the dietary laws of their religion," McElyea v. Babbitt, 833 F.2d 196 (9th Cir. 1987), and that inmates retain their rights under the First Amendment "including its directive that no law shall prohibit the free exercise of religion."  O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987).

the Constitution and under RLUIPA[6], the Court finds that neither law was violated

by Defendants' actions.

Plaintiff contends that he was "denied a diet consistent with [his]

religion's rules," and that he was denied access to any religious items consistent

with his faith. (SAC at 5A). Defendants argue that neither contention is true.

(MSJ at 7–8.) First, with respect to Defendant Borge, Borge sets out in his

declaration that he took the relevant and necessary steps to ensure that Plaintiff did,

in fact, receive a proper diet and religious literature. See (CSF, Ex. 2.)

Specifically, Borge argues that when Plaintiff requested a copy of the Koran, he

met with Plaintiff, explained that he only had pamphlets, and provided those

pamphlets to Plaintiff. (Id.) Borge further argues that he told Plaintiff that if

Plaintiff could provide a phone number of a friend or other person that could

donate a Koran, Borge would contact them and have a copy sent through the

_____

[6] The Court does not reach the question of whether monetary damages are
available against officials sued in their individual capacities under RLUIPA.
While the Ninth Circuit has not yet ruled on this question, other circuit courts and a
number of district courts within the Ninth Circuit have ruled that RLUIPA does not
create a private right of action with respect to state officers in their individual
capacities. See Nelson v. Miller, 570 F.3d 868, 885–89 (7th Cir. 2009);
Rendelman v. Rouse, 569 F.3d 182, 187–89 (4th Cir. 2009); Sossamon v. Texas,
560 F.3d 316, 327 n. 23 (5th Cir. 2009); Smith v. Allen, 502 F.3d 1255, 1272 (11th
Cir. 2007); Sokolsky v. Voss, 2010 WL 2991522 at *2–3 (E.D. Cal. 2010). Here,
because the Court determines that Defendants did not violate Plaintiff's statutory
or constitutional rights, the Court need not reach the aforementioned issue.

bookstore.  (Id.)  With respect to the meals requested by Plaintiff, Borge contends that Plaintiff submitted a request for Halal meals, and that Borge approved the request and sent it to the relevant chain of command for approval.  (Id.)  To that extent, Defendants attach to their CSF Exhibits A and B demonstrating Plaintiff's request for Halal meals, and Borge's memorandum approving the request.  (CSF, Ex. A–B.)

Plaintiff fails to rebut any of these arguments or show in any manner that the aforementioned documents and statements are untrue in any way.  The Court fails to see how, as a chaplain at the prison, Borge's actions establish a constitutional or statutory violation of Plaintiff's right to freely practice his religion.  Although Plaintiff submitted to the Court copies of the grievances he filed in response to Borge's actions, these grievances also fail to show that Borge violated Plaintiff's rights.  (Doc. # 88.)  Borge took all possible steps to ensure that Plaintiff's requests were met, and Plaintiff fails to provide any evidence contravening those arguments.  Indeed, the relevant documents show that Plaintiff was approved for a religious, no-pork diet.  Further, Plaintiff fails to show that he was actually denied a Koran or discriminated against for being Muslim.  Thus,

there is no genuine issue of material fact as to whether Borge's conduct deprived Plaintiff of his rights under the First Amendment or RLUIPA.

Second, with respect to Frank and Espinda, Plaintiff alleges that the extent of their involvement encompasses receiving grievances from Plaintiff. (SAC at 5A.)  Specifically, Plaintiff alleges that he contacted Espinda via the internal grievance procedure, who responded that Plaintiff had to contact the Department of Public Safety because the policies and procedures he complained of stemmed from there.  (SAC at 5A).  As to Frank, Plaintiff alleges that he contacted Frank via the internal grievance procedure and Frank responded that there was no problem and that the conditions Plaintiff complained of did not exist.  (Id.) Beyond these two grievances, Plaintiff fails to show how Frank or Espinda were otherwise involved in any denial of Plaintiff's religious rights.

To state a valid claim under § 1983, a plaintiff must allege that he suffered a specific injury as a result of specific conduct of a defendant and show an affirmative link between the injury and the conduct of that defendant.  Rizzo v. Goode, 423 U.S. 362, 371-72, 377 (1976). To state a claim against a supervisory official, the civil rights complainant must allege that the supervisory official personally participated in the constitutional deprivation or that the supervisory official was aware of widespread abuses and, with deliberate indifference to the

inmate's constitutional rights, failed to take action to prevent further misconduct. See Ortez v. Washington County, Or., 88 F.3d 804, 809 (9th Cir. 1996); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); King v. Atiyeh, 814 F.2d 565, 568 (9th Cir. 1987); see also Monell v. New York City Dep't of Soc. Serv., 436 U.S. 658, 691 (1978). There is no respondeat superior liability under § 1983, and, therefore, a defendant's position as the supervisor of persons who allegedly violated Plaintiff's constitutional rights does not impose liability. Monell, 436 U.S. at 691-92; Taylor, 880 F.2d at 1045. Here, Plaintiff fails to show that Frank or Espinda's specific conduct caused Plaintiff to suffer a specific injury.

Further, even if Plaintiff was able to show that his religious rights were denied by someone else in the prison, such a denial of rights does not implicate Frank and Espinda simply because they received grievances from Plaintiff. The mere participation of Frank and Espinda in the prison's administrative appeal process is an insufficient basis on which to state a violation of religious rights claim against either the warden or Department of Public Safety director. See, e.g., Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (holding that a prisoner has no constitutional right to an effective grievance or appeal procedure); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); see also, George v. Smith, 507 F.3d 605, 609-10 (7th Cir. 2007) (holding that only persons who cause

or participate in civil rights violations can be held responsible and that "[r]uling against a prisoner on an administrative complaint does not cause or contribute to the violation"); Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999) (holding that prison officials whose only roles involved the denial of the prisoner's administrative grievances cannot be held liable under § 1983); Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) ("[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates.").

Furthermore, Plaintiff's additional briefing – consisting of copies of several internal grievances filed by Plaintiff – affirm Defendants' arguments that Plaintiff was, in fact, approved for a religious diet and told that he may contact persons outside the prison to receive religious material. (Doc. # 88.) Nothing Plaintiff has submitted disputes these contentions, thus no genuine issue of material facts exists. Therefore, the Court finds that Plaintiff's allegations are insufficient to trigger a violation of his rights under the First Amendment or RLUIPA as to Defendants Frank and Espinda.

For the aforementioned reasons, the Court GRANTS Defendants' Motion for Summary Judgment as to Count I of Plaintiff's SAC.

B.      Count II: Eighth Amendment

In Count II of Plaintiff's SAC, he alleges that he was deprived of his Eighth Amendment right to be free from cruel and unusual punishment based on the fact that he was "depriv[ed] of any forms of exercise."  (SAC at 6–6A.) Defendants[7] argue that they are entitled to qualified immunity on the basis that an inmate does not have a clearly established right to receive the response to a grievance that he seeks.  (MSJ at 10.)

As stated above, for Defendants to receive qualified immunity, their conduct may not have violated clearly established statutory or constitutional rights of which a reasonable person would have known.  Harlow, 457 U.S. at 818.  The Court first considers whether providing exercise to inmates is a clearly established constitutional right.

"Exercise has been determined to be one of the basic human necessities protected by the Eighth Amendment."  LeMaire v. Maass, 12 F.3d 1444, 1458 (9th Cir. 1993).  "[T]his circuit has determined the long-term denial of outside exercise is unconstitutional."  Id.  The Ninth Circuit has "held consistently that 'ordinarily the lack of outside exercise for extended periods is a sufficiently

---

[7] For purposes of Count II, the only relevant Defendants are Frank and Espinda because Borge, as chaplain, had no role whatsoever in Plaintiff's alleged deprivation of exercise.

serious deprivation' for Eighth Amendment purposes."  Thomas v. Ponder, 611

F.3d 1144, 1151 (9th Cir. 2010) (quoting LeMaire, 12 F.3d at 1457).  See, e.g.,

Lopez v. Smith, 203 F.3d 1122, 1132–33 (9th Cir. 2000) (en banc); Allen v. Sakai,

48 F.3d 1082, 1086 (9th Cir. 1994).

      While it is clearly established that inmates may not be denied the

ability to exercise for extended periods of time, that right is not "absolute and

indefeasible" nor does it "trump[] all other considerations."  Norwood v. Vance,

591 F.3d 1070 (9th Cir. 2010) (citing Allen, 48 F.3d at 1088).  "[O]fficials have a

duty to keep inmates safe, and in particular to protect them from each other."

Norwood, 591 F.3d at 1070 (citations omitted).  "Officials must balance this

imperative against other obligations that our laws impose, such as providing

outdoor exercise."  Id.  Further, while exercise is one of the basic human

necessities protected by the Eighth Amendment, a temporary denial of outdoor

exercise with no medical effects is not a substantial deprivation.  Norwood v.

Vance, 591 F.3d 1062, 1070 (9th Cir. 2010) (citing May v. Baldwin, 109 F.3d 557,

565 (9th Cir. 1997)).  Thus, the Court concludes that, while there is a clearly

established right to exercise under the Eighth Amendment, that right is curtailed by

safety necessities as deemed by the prison.

For Defendants to receive qualified immunity, they must show that they did not violate Plaintiff's constitutional rights under the Eighth Amendment. A constitutional violation of the Eighth Amendment is made upon a showing that an inmate was deprived of something sufficiently serious, and that the deprivation occurred with deliberate indifference to the inmate's health or safety. Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (citing Foster v. Runnels, 554 F.3d 807 (9th Cir. 2009) (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)). Showing deliberate indifference involves a two-party inquiry: (1) the inmate must show that the prison officials were aware of a "substantial risk or serious harm" to an inmate's health or safety, and (2) the inmate must show that the prison officials had no reasonable justification for the deprivation in spite of that risk. Ponder, 611 F.3d at 1150 (citations omitted).

Plaintiff claims that the response he received upon complaining of his lack of opportunity to exercise, was that there were staff shortages. (SAC at 6B.) Defendants neither confirm nor deny this contention, nor do they explain why staff shortages may have been relevant in denying Plaintiff opportunity for outside exercise. The Ninth Circuit has found that "logistical problems" are an insufficient basis for denying inmates exercise, Allen, 48 F.3d at 1088, while legitimate safety concerns afford prison staff wide-ranging deference in restricting inmate exercise,

Norwood v. Vance, 591 F.3d at 1070 (citations omitted).  Here, in their Motion for

Summary Judgment, Defendants have failed to make any showing of penalogical

necessity for the prison lockdowns or for denying inmates access to exercise.[8]

Moreover, the Ninth Circuit has held that "claims involving a

prisoner's right to exercise require a full consideration of context, and thus a fully

developed record."  Richardson v. Runnels, 594 F.3d 666, 672 (9th Cir. 2010).

The instant record before the Court, as it relates to Count II, is entirely

undeveloped.  Neither party has provided the Court with any specific information

as to how long inmates were deprived from exercise, prison conditions relating to

why such a deprivation may have occurred, and any other factual information

relating to security, safety, and lockdowns that took place at OCC. during the time

of Plaintiff's imprisonment.  Without more, the Court is unable to find that there is

no genuine issue of material fact as to Count II of Plaintiff's SAC.

Accordingly, Defendants' Motion for Summary Judgment is DENIED

as to Count II.

---

[8]Indeed, Defendants' CSF does not include a single document relating to
Count II of Plaintiff's SAC, and Defendants' 10-page motion includes less than
half a paragraph discussing why the Court should grant summary judgment as to
Count II.

IV.     Motion for Change of Venue

        Plaintiff filed a Motion for Change of Venue requesting that his case

be moved to California "for the purpose of producing expert witnesses

knowledgeable in the policies and practices of the religion of Islam," and to "aid in

having expert medical testimony available to the court about the effects [sic] being

denied any exercise and of the psychological and medical harm caused by

prolonged periods of lockdown."  (Mot. 2 at 2.)  Plaintiff also argues that he

resides in California and the continued costs of travel for the instant proceedings

presents an undue hardship.  (Id.)  Defendants argue that Plaintiff's Motion for

Change of Venue should be denied for a variety of reasons including the fact that

the Ninth Circuit factors in considering a motion to transfer venue weigh heavily in

favor of denying Plaintiff's Motion for Change of Venue.  (Opp'n 2 at 5–6.)

        A motion to transfer venue requires the district court to consider a

number of factors, including the following: "(1) the location where the relevant

agreements were negotiated and executed; (2) the state that is most familiar with

the governing law; (3) the plaintiff's choice of forum; (4) the respective parties'

contacts with the forum; (5) the contacts relating to the plaintiff's cause of action in

the chosen forum; (6) the differences in the costs of litigation in the two forums;

(7) the availability of compulsory process to compel attendance of unwilling non-party witnesses; and (8) the ease of access to sources of proof." Jones v. GNC Franchising, Inc., 211 F.3d 495, 498–99 (9th Cir. 2000) (citations omitted).

As to the first factor,  the location where the relevant agreement was negotiated and executed, all of the relevant interactions at issue in the instant case took place at OCC. in the State of Hawaii.  As to the second factor, the state that is most familiar with the governing law, any state in the United States is in an equal position to interpret the laws and Constitution of the United States.  As to the third factor, the plaintiff's choice of forum, Plaintiff filed this lawsuit in Hawaii, which counsels against transfer to California.  As to the fourth factor, the respective parties' contacts with the forum, all of the Defendants reside in Hawaii, all of the actions took place in Hawaii, and Plaintiff himself lived in Hawaii when the relevant actions took place.  As to the fifth factor, the contacts relating to the Plaintiff's cause of action in the chosen forum, as stated above, all of the Defendants reside in Hawaii and the majority of evidence is located in Hawaii since the actions took place in Hawaii.  As to the sixth factor, differences in the cost of litigation in the two forums, Plaintiff is a California resident, and he argues

that it would be prohibitively burdensome for him to continue to litigate in Hawaii. The Court recognizes that Plaintiff would incur costs in traveling to Hawaii to litigate this action; however, Plaintiff chose to leave Hawaii and move to California upon his release from prison. As to the seventh factor, the availability of compulsory process to compel attendance of unwilling nonparty witnesses, the Court considers this factor to be neutral because neither Plaintiff nor Defendants have identified any unwilling nonparty witnesses. As to the eighth factor, ease of access to sources of proof, all evidence contained at OCC. and any prison records located at OCC. are located in Hawaii. Considering all of these factors, the Court finds that they weigh heavily in favor of retaining this action in Hawaii.

Accordingly, Plaintiff's Motion for Change of Venue is DENIED.


## CONCLUSION

For the reasons stated above, this Court GRANTS IN PART and DENIES IN PART Defendants' Motion for Summary Judgment, and DENIES

Plaintiff's Motion for Change of Venue.  Count I of Plaintiff's SAC is

DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, March 31, 2011.



_____
David Alan Ezra
United States District Judge

Kirksey v. Frank et al., Cv. No. 09-00334 DAE-KSC; ORDER: (1) GRANTING
IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND (2) DENYING PLAINTIFF'S MOTION FOR
CHANGE OF VENUE